Davis, J.,
dissenting. The will of Bitzer contained the following provisions, which are all that are material in the consideration of this case, viz: “First. My will is, that all my just debts and funeral expenses shall be paid out of my estate, as soon after my decease as shall be found convenient.
“Second. I give, devise and bequeath to my wife, Lizzie H. Bitzer, such portion of my estate, should she survive me, as she may be entitled to under the- lazos and statute of the state of Ohio. Should she not survive me, then it is my will that no part of my estate shall go to her, her heirs, nor to her devisees.
“Third. S%ibject to the above provisions it is my will and direction that my executor hereinafter named shall convert all my property, both personal and real, without any order of court, unless it be necessary for the setting off of dozoer to my wife, into money and divide the same equally among my five children,” etc.
*90 It will be observed that the testator allows to his wife only such portion of his estate as the laws of this state and the statute of descents and distribution would give her. He adds nothing of his own bounty. He gives her nothing by the will, and apparently only mentions her to make it clear that he intends that she shall have nothing from his estate except what she can get by force of “law.” In this respect, therefore, the will is like that which was the subject of controversy in Hutchings v. Davis, 68 Ohio St., 160. Such a will does not call upon the widow to elect between the will and her legal rights, because the will ex vi termini remits her entirely to the latter; and Section 5963, Revised Statutes, rather ostentatiously quoted in the brief of plaintiff in error and the opinion of the majority, has no relevancy whatever, because it expressly applies only “if any provision be made for a widow or widower in the will of the deceased consort.”
For the reasons stated above Section 5964, Revised Statutes, does not apply; and indeed it is fair to, say that if any statute had provided for cases like this and Hutchings v. Davis, these cases, and several like them, would not have been here. If the defendant in error is entitled to what she is claiming, it is by virtue of that body of decision and precedent which the testator refers to as “laws,” when he says that he gives to nis wife “such portion of my estate, should she survive me, as she may be entitled to under the laws and the statute of Ohio.”
Hence the real and only question in the case is whether the widow is “entitled under the laws” *91 of this state to both dower and distributive share in the proceeds of real estate converted into money by the will of her husband. That this was a conversion for all purposes, and not for any specific purpose, is as plain as it can be made. The will reads; “Subject to the foregoing provisions,” that is, the payment of debts and funeral expenses and whatever the .widow may be entitled to under the laws and statute of the. state of Ohio, “it is my will and direction that my executor hereinafter named shall convert all my property, both personal and real, without any order of court, unless it be necessary for the setting off of dower to my wife, into money and divide the same equally among my five children.” It is in its very terms an out and out conversion for every purpose which can arise in the settlement and distribution of the testator’s estate. The testator bequeaths to his wife nothing. He concedes to her, and concedes it grudgingly as to a stranger and an alien, just what the law would give her, and only that because he cannot do otherwise. Intentionally or otherwise, he created an opportunity for a small advantage to her in the conversion of his real estate. It may be true that such advantage might have been avoided by the- heirs taking the estate in kind, nevertheless when the testator directed the conversion and the heirs chose to carry it out, both he and they must abide by the consequences which would result in law from their voluntary act. But it does not follow that because, in effecting the conversion it might be necessary to assign dower or to pay for it in money, the testator in *92 tended to give to his widow, or did, by directing a conversion, bequeath to her, anything in lieu of or in addition to dower or distributive share. The language of the will evinces the opposite intention and what she gets the law gives her and not the will. Therefore I say again that the widow could not be required to elect; and with that proposition established a large part of the argument for the plaintiff in error falls to the ground.
There are only one or two of the cases cited in the opinion of the court which seem to me to be at all pertinent to the contention here; but before I review themo I call attention to the fact that citátions and quotations from English text-writers and cases, can have ■ but little consideration here, because the English doctrine of equitable conversion is not entirely in harmony with high American authority.
Bispham on Equity, (7 ed.), Sections 317 and 318, directs attention to this distinction between the authorities, as follows: “In England * * * every conversion, however absolute in its terms, will be deemed a conversion for the purposes of the will only, unless the testator distinctly indicates an intention that it is, on the failure of those purposes, to prevail as between the persons on whom the law ' casts the real and personal property of an intestate, namely the heir and next of kin. * * * In the United States the rule under consideration has not received á construction so favorable to the heir. In Craig v. Leslie, (3 Wheat., 563) it was said to be settled, ‘that, if the intent of the testator appears to have been to stamp upon the proceeds of the land described *93 to be sold the quality of personalty, not only to subserve the particular purposes of the will, but to all intents, the claim of the heir-at-law to a resulting trust is defeated, and the estate is considered to be personal/ It was accordingly held that the blending. of the proceeds of realty with the personalty, so as to form a common fund, for all the purposes of the will, though it should happen that some of them fail, will render the conversion absolute.”
The same distinction is noted in Pomeroy on Equity (3 ed.), Section 1171, note 1. The majority adopt the English rule in this case. For example see quotation from Jarman, ante, p. 73. This is not only opposed to the doctrine of Craig v. Leslie, 3 Wheat., 563; Morrow v. Brenizer, 2 Rawle, 185, and Burr v. Sim, 1 Whart., 252, but also to that of the cases cited in Hutchings v. Davis. I have not thought it necessary to my present purpose to look for others. In Given v. Hilton, 95 U. S., 591, the controversy was over a will in which the purposes of the conversion were not so definite as in this will. The testator directed that as soon after his decease as possible his debts and funeral expenses should be paid out of any portion of his estate which might first come into the hands of his executors; and he then directed that all of his estate except such as he specifically devised and bequeathed, should be sold ' and the proceeds divided in certain proportions. The court held, “that his direction to his executors to sell all his estate not otherwise devised and bequeathed was intended to secure a complete conversion, to all *94 intents, of his entire property into personal estate;” and the reason which the court gave was this, p. 596: “It has been held that a general direction to sell and apply the proceeds indiscriminately to the payment of debts and legacies operates as a conversion out and out. Roper on Legacies, 341, 342, et seq.; King v. Woodhull, 3 Edw., (N. Y.) 82; Durour v. Motteux, 1 Ves., 321. Blending the proceeds of realty and personalty in one fund for the payment of debts and legacies is generally regarded evidence of an intention to give to the proceeds of a sale ordered the character of personalty throughout, though not a conclusive indication in all cases. These indications exist in the will before us, and, were it necessary, they might be called in aid of its. construction.”
It was held in Harrington v. Pier, 105 Wis., 485, that “the blending of realty and personalty in one fund for all purposes of a will strongly evidences an intent that the whole estate shall at all events be distributed as personal property;” and the reasoning and authorities which that court based its conclusion upon are found on pages 491-493 of the report. That decision was upon a will in which the testator directed the conversion of the real estate into money and that after payment of the debts, funeral expenses and expenses of administration three-fourths of the net proceeds should be paid as directed and then the residue h> two persons named.
The cases which I have cited are not more clearly cases of out and out conversion than this, one, for, at the outset, I think I have shown that *95 this will requires a conversion for all purposes,, and in terms for the payment of debts, funeral expenses,'dower and such portion of his estate as his wife is entitled to under the laws and statute of Ohio, and then, in addition thereto, legacies. Now what shall be done with the fund resulting from the conversion? “Generally speaking equity will carry out the principle of equitable conversion in all of its consequences, and as far as it is necessary to effectuate the well defined and lawful purposes of the instrument directing such conversion, and to determine the property rights of all parties claiming under or through it, will recognize all of its legitimate consequences and treat the property, from the time the conversion takes place to all intents and purposes as of the nature and character into which it should have been changed, and will determine the rights of parties to it as in its changed form.” .9 Cyc., 850.
Among the large number of cases which are cited in support of the text just now quoted, are two of the cases cited in the opinion in Hutchings v. Davis, and which the majority opinion in this case attempts to distinguish, namely, Collier v. Collier’s Exr., 3 Ohio St., 369, and Ferguson v. Stuart’s Exr., 14 Ohio, 140.
It therefore seems clear to me that the conclusion of the majority, that the doctrine of equitable conversion has no application to a case of this kind, is both illogical and against the great weight of authority. The “well defined and lawful purposes” of this will are the conversion of the estate into personalty for the payment of debts and distribution, subject to the rights of the widow under *96 the law. The “legitimate consequences’” of such a conversion are that she must have her share, as defined by the statute of distributions, in the estate to be distributed as personalty. Dower or its equivalent she must have, and that is conceded, in the process of effecting the conversion. Thát is another “legitimate consequence” of the conversion.
But it is said that dower in land and in the proceeds of the land are inconsistent rights, that it would be inequitable to allow the widow both, and she musí therefore elect between them. That objection was considered in Hutchings v. Davis, and the answer to it needs not to be elaborated here. Briefly it is this: A widow’s right to dower and her right to a distributive share of personalty are both created by statute; and our statutes nowhere declare them to be inconsistent, nor do they require an election between these rights under the conditions found in this case. A very slight amendment of the statutes would make clear the application or non-application of the doctrine of election in such 'cases, if such should be the desire and meaning of the legislature. The case of Hutchings v. Davis called attention to the defect in 'the statutes, if defect it was, six years ago; and this court has reason to know that the same questions have arisen in several cases within that time, yet legislation which would require the widow to elect in such cases and which would restrict her to the dower right only in real estate converted into personalty, has not been passed, or so far as I know even suggested. The inference is that the alleged inequity in the doc *97 trine of Hutchings v. Davis has not been made apparent to the legislature. Reference was made in that case to Barber v. Hite, 39 Ohio St., 185. Counsel for the plaintiff in error in this case has endeavored to distinguish the cited case by saying that no will was involved in it. That is true. The case, however, was not used as an authority for the application of the doctrine of equitable conversion, but as an illustration of the very point which I am now discussing. Barber sold a farm and agreed to conve}'- it free of dower. His wife refused to relinquish dower unless one-third of the purchase money should be paid to her as her separate property. To this Barber agreed and the purchaser paid one-third to the wife, and paid and secured to be paid to Barber the other two-thirds of the purchase money. Some months thereafter Barber died leaving personal estate, consisting in whole or in part of proceeds of the farm sold. The widow claimed the distributive share in this personalty and it was resisted on the ground that she had received the full one-third of the purchase money. The court below found the facts to be that the widow had received one-third of the purchase money in consideration of releasing her right of dower and that there was no agreement as to her right in any other portion of the estate of her husband; but that court rendered judgment against the widow, which judgment was reversed by this court and judgment was rendered for the widow, on the ground that she was “not estopped from claiming her distributive share of any part of the personal estate of her deceased husband by reason of the *98 fact that such estate was augmented by the conversion of such realty into personalty.” Now it is, scarcely conceivable that, if the inconsistency between these rights and the inequity.of the widow’s, claim were so obvious as suggested here, such a. complete defense to the widow’s claim would have-been overlooked or ignored.
Before concluding I will briefly indicate why I think that several cases, apparently much relied .on by the majority, have neither authority nor persuasiveness here. McElroy v. McElroy, 110 Tenn., 137, does not involve nor decide any of the questions raised in this case. In Barnett’s Admr. v. Barnett’s Admr., 1 Metcalfe, (Ky.) 254, it was held that a widow renouncing the provisions, of her husband’s will under the act of 1797, has a right to dower in lands which are directed by the will to be sold by the executors and the proceeds paid to the devisees; and being so entitled, she can not claim an interest in them as personal estate, converted into that character by the terms of the will. It seems, however, (p. 257) that by the statute in force at the testator’s death, a widow if not satisfied with her husband’s will might renounce the 'benefits thereof, and thereupon she would be entitled to such share of his personal estate as if he had died intestate. The court held that inasmuch as the testator died being the owner of real estate, the subsequent conversion of it into personalty under the direction of his will did not make it his personal estate. Whatever may be said of the soundness of that reasoning under the laws of Kentucky, it can not be regarded as. of any weight in Ohio, because, as I have already *99 shown, in this state a widow can be required to elect or renounce under a will, only .“if any provision be made for” her, Revised Statutes, Section 5963, and because, in this state, the widow’s distributive share is to come from “the personal property subject to distribution.” Section 4176, Revised Statutes.
The two cases, Hoover v. Landis, 76 Pa. St., 354, and Cunningham’s Estate, 137 Pa. St., 621, may be considered together. In the 'opinion in the latter case, p. 628, it is said, “The law does not permit her to say there is a will for conversion, and no will as to her share. This was decided in Hoover v. Landis, 76 Pa. St., 354, but the learned auditor in the present case drew a distinction based on the ‘fact that in Ploover’s will provision was made for his wife, while in Cunningham’s she was not named; but such a distinction is altogether untenable. Followed to its logical conclusion, it would result that a will which gave the widow one cent would require and support a valid election, while one which gave her nothing would not permit an election at all. The law does not sanction such an illusory distinction, and the argument which would support it is founded on wrong premises.” Then follows the passage quoted in the majority opinion in this case. The soundness of the reasoning in this Pennsylvania case depends entirely on two premises, first, that a widow must elect whether a provision is made for her or not, and. second, that a direction in a will to convert realty into personalty is a provision for the widow, although she is not named. I deny both propositions as being law in Ohio, *100 and think I have shown the fallacy of them hereinbefore.
Thus by a process of reasoning of more than doubtful conclusiveness, by a bare majority of one, and a change of mind in only one .of the judges who sat in Hutchings v. Davis, that case is overruled; and thus twice within a short time (Yeager v. Tuning, 79 Ohio St., 121, 129) has this court overthrown an established rule of property, all of which tends to the conclusion that at the present time a decision constituting a rule of property is no more permanent and no more obligatory than a rule of court, and whenever it inconveniences somebod)'’ it may be set aside. I am entirely satisfied that the judgment rendered in the courts below was right and should be affirmed.